**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DEWAYNE MCGREW** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIV. ACT. NO. 1:19-cv-499-TFM-MU-C** |
| | ) | |
| **BP EXPLORATION & PRODUCTION,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are the related motions: Defendant's *Motion to Dismiss* (Doc. 37, filed December 1, 2020) and Plaintiff's *Opposed Motion For Substitution of Parties* (Doc. 48, filed December 29, 2020). Plaintiff Dewayne McGrew filed a response in opposition to the motion to dismiss (Doc. 51, filed January 4, 2021) and Defendant BP Exploration & Production, Inc. filed a reply in support of the motion to dismiss (Doc. 52, filed January 11, 2021). The Court held a hearing on the motions on March 4, 2021. After a careful review of all the written pleadings, motions, response, and reply as well as the oral arguments of counsel, the Court **GRANTS** the motion to dismiss (Doc. 37) and **DENIES** the motion to substitute (Doc. 48) for the reasons articulated below. Further, as a result, the remaining motions in this case are **DENIED as moot**.

## I.   PARTIES, JURISDICTION, AND VENUE

Plaintiff Dewayne McGrew ("Plaintiff," "McGrew," or "Decedent") brought this Back-End Litigation Option lawsuit ("BELO") for Later Manifested Physical Conditions ("LMPC") in

this Court pursuant to the terms and requirements of the Medical Settlement Agreement ("MSA").[1]

Plaintiff seeks to recover against Defendant BP Exploration & Production, Inc. and Defendant BP America Production Company (collectively "Defendants") for all damage allowable under the MSA for LMPC suffered as a result of the *Deepwater Horizon Oil Spill* ("Oil Spill").  Doc. 1.  Pursuant to the MSA and the approval order, the Eastern District of Louisiana has and retains jurisdiction.  *Id*. at ¶ 7.  This action was transferred from the Eastern District of Louisiana to this Court.  Doc. 1.

Subject matter exists under 28 U.S.C. § 1331 (federal question jurisdiction) because Article III, Section 2 of the United States Constitution empowers the federal judiciary to hear "all cases of admiralty and maritime jurisdiction."  Subject matter jurisdiction also exists under 28 U.S.C. § 1332 (diversity jurisdiction) because all of the parties are diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Personal jurisdiction and venue are not contested and adequate support exists for both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

As relevant background from the Plaintiff's complaint,[2] the BP Oil Spill occurred with the blowout of the Macondo Well which was drilled by Deepwater Horizon Rig (DHR) on the outer continental shelf in the Gulf of Mexico, about 130 miles southeast of New Orleans, Louisiana. Doc. 1 at ¶ 12.  Around April 20, 2010, explosions and fire occurred on board of the DHR.  As a result of the explosion, crude oil, and other hydrocarbons were released following the explosion that contained benzene and other volatile organic compounds such as ethylbenzene, toluene,

---

[1] Deepwater Horizon *Medical Benefits Class Actions Settlement Agreement, as Amended on May 1, 2012*, MDL 2179, Rec. Doc. 6427-1 (May 3, 2012), § II.Q.
[2] The Court takes the allegations in Plaintiff's complaint as true for purposes of considering Defendant's motion to dismiss.

xylene and naphthalene, polycyclic aromatic hydrocarbons ("PAHs"), diesel fumes and heavy metals such as aluminum, cadmium, nickel, lead, and zinc. *Id*. at ¶ 13-14. Crude oil specifically contains chemicals such as benzene, PAHs, and many other toxic chemicals that move from the oil into the air. These chemicals with pungent petroleum like odors, once airborne, can blow over the ocean for miles and reach communities far from the location of the Oil Spill. Accordingly, activities were performed by clean-up workers under the direction of Unified Command. Defendants purchased Corexit® EC9500A and Corexit® EC9527A (collectively "Dispersants"), highly noxious chemical dispersants, from Nalco and sprayed these Dispersants over large areas that contained oil. *Id*. at ¶ 17. According to the Material Safety Data Sheet ("Data Sheet"), an informational form about the toxicity and health effects of a particular substance, both Dispersants contain non-specified organic sulfonic acid salt, which is "moderately toxic," as well as propylene glycol, a chemical with solvent properties. Propylene glycol is a mild irritant, exposure may cause erythema, edema, induration, and other skin problems. Exposure to high levels of propylene glycol and mists containing this chemical can cause eye, nose, throat, and lung irritation. *Id*. at ¶ 21.

The Data Sheet for Corexit® EC9500A indicates that it contains hazardous substances; it is harmful to human health; and that dermal exposure, inhalation, and ingestion should be avoided. It is an eye and skin irritant, and may irritate the respiratory tract if inhaled and cause chemical pneumonia if ingested. The Data Sheet for Corexit® EC9527A states similar health effects. Specifically, if Corexit® EC9527A is ingested it may cause liver and kidney effects and/or damage, irritate the gastrointestinal tract, and acute exposure may cause adverse central nervous system effects, nausea, vomiting, and anesthetic or narcotic effects. *Id*. at ¶ 19. Corexit® EC9527A contains 2-butoxyethanol ("EGBE"), an eye, nose, and throat irritant that can cause nausea, vomiting, diarrhea, and abdominal pain. Exposure to EGBE can cause headaches,

dizziness, lightheadedness, unconsciousness.  Repeated or excessive exposure to EGBE may cause injury to red blood cells, the kidneys, and the liver.  Chronic exposure may result in damage to the male and female reproductive systems in animals.  *Id*. at 20.

Plaintiff was a Clean-up Worker employed by PPI from approximately July 1, 2010 to September 1, 2010.  Plaintiff performed shoreline cleanup and boom decontamination. Throughout the duration of his time as a Clean-up Worker, Plaintiff was exposed to Dispersants, and other harmful chemicals through inhalation, airborne, and direct contact to oil.  Specifically, due to the lack of proper protective gear his eyes, nose, mouth, and skin were exposed to oil, Dispersants, and other harmful chemicals.  Following his exposure, Plaintiff suffered permanent injuries and was first diagnosed with T Cell Lymphoma on November 10, 2015.  *Id*. at ¶¶ 23-27. On July 6, 2018, Plaintiff issued a valid Notice of Intent to Sue (LMPC 0041352).  *See MSA*, § VIII.A.  On August 10, 2018, Plaintiff received Defendants' Notice of Election *Not* To Mediate. Doc. 1-1.  On February 8, 2019, Plaintiff filed a Complaint in the Eastern District of Louisiana through the established Multi-District Litigation ("MDL") process.  The Complaint alleges that his permanent injuries and LMPCs were legally and proximately caused by the exposure to oil, Dispersants and other harmful chemicals from the Oil Spill.  Doc. 1.

On August 6, 2019, this case was transferred to this Court.  *See* Doc. 7.  On November 27, 2019, Defendants filed their *Suggestion of Death* document stating "[p]ursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, Defendants…hereby suggest upon the record that Plaintiff Dewayne McGrew died on or about May 26th, 2019."  Doc. 18.  On December 30, 2019, in its order denying the Defendant's motion to compel discovery (Doc. 19), the Court noted that the Defendants did not indicate whether the *Suggestion of Death* was served on Decedent's representative or successor.  Doc. 20 at 2-3.  Accordingly, the Court suggested "the parties confer

and advise this Court whether a motion for substitution will be made by the decedent's successor or representative." *Id*. at 3.  No documents were filed by either side.  Thus, on March 16, 2020, the Court ordered the parties "to inform this Court not later than **March 30, 2020**, whether a motion for substitution will be made by the deceased Plaintiff's successor or representative."  Doc. 26 (emphasis in original).  On March 24, 2020, Decedent's counsel informed the Defendants that they intended to file a motion for substitution.  Doc. 51-1 at 4.  On March 30, 2020, in accordance with counsel's representations and the March 16, 2020 Order, Defendants informed the Magistrate Judge by email that Decedent's counsel would be filing a motion to substitute a personal representative in place of the Decedent.  Doc. 37-2.  Decedent's former attorney emailed a draft of the Motion to Substitute Parties to Defendants for their review.  Doc. 51 at 2.  Defendants replied to the email and stated they could not agree to Plaintiff's amended complaint and would need to see a further amended complaint before agreeing to the Motion for Substitution.  *Id*.

On August 1, 2020, one of the Decedent's assigned counsel (Nathan Nelson) left the Downs Law Group.  He was one of the three original attorneys on the suit from the Complaint. *See* Doc. 1, signature block.  He did not file a motion to withdraw until December 31, 2020 when another counsel filed the motion on his behalf.  *See* Doc. 50.  The motion to withdraw stated that Plaintiff would continue to be represented by Ross Bussard.  *Id*.  Mr. Bussard then later had his own motion to withdraw filed by another attorney Charles David Durkee.  *See* Doc. 57.  It would appear that though Mr. Durkee never filed a formal notice of appearance or a pro hac vice motion, he first signed a pleading on December 10, 2020 on the motion to modify the scheduling order and was added to the list of counsel at that time.  *See* Doc. 42.

As no motion to substitute had been filed, Defendants served the previously-filed *Suggestion of Death* on Darrius Walker ("Walker")—Dewayne McGrew's wife and Personal

Representative of his estate.  Doc. 37 at 2.  They personally served Walker on August 27, 2020 at approximately 7:00 p.m.  *See* Doc. 37-3.  Still no motion to substitute was filed.

Therefore, on December 1, 2020, Defendants filed their *Motion to Dismiss* (Doc. 37). Defendants' motion moves this Court to dismiss this action pursuant to Fed. R. Civ. P. 25(a)(1) for Plaintiff's failure to substitute the proper party within the ninety-day dismissal period.  Doc. 37.

On December 29, 2020, Plaintiff filed an *Opposed Motion for Substitution of Parties* (Doc. 48).  Plaintiff's motion moves this Court to allow Walker to substitute McGrew as plaintiff in this action, so that the Decedent's claims survive and the action may proceed on his behalf.

On January 4, 2021 Plaintiff filed a response in opposition to the motion to dismiss.  Doc. 51.  Plaintiff's response argues that Defendants' suggestion of death served on Walker was ineffective to trigger the ninety-day rule in Fed. R. Civ. P. 25(a)(1) because it did not alert Walker to the death's consequences on the pending action.  Plaintiff also argues that the ninety-day period should be tolled for lack of notice to Walker and excusable neglect.  Defendants filed their reply on the motion to dismiss.  Doc. 52.

In addition to the competing motion to dismiss and motion to substitute, on December 10, 2020, Plaintiff also filed a *Motion to Modify Court's Scheduling Order and/or to Extend Time* (Doc. 42), a *Memorandum in Support of Motion to Continue Trial Modify Scheduling Order* (Doc. 43), and a *Request for Oral Argument* (Doc. 44) regarding the requested modification to the scheduling order.  Those motions have been held in abeyance pending resolution of the substitution issue raised by the motion to dismiss and motion for substitution.

On March 4, 2021, the Court held a hearing on the substitution issues.  The motions are now ripe for the Court's review.

### III.    DISCUSSION AND ANALYSIS

Rule 25 of the Federal Rules of Civil Procedure authorizes the substitution of parties. Pursuant to Fed. R. Civ. P. 25(a)(1), "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."

Defendants move this Court to dismiss Plaintiff's claims with prejudice pursuant to Fed. R. Civ. P. 25(a)(1). Doc. 37. Defendants argue that this action should be dismissed because a motion for substitution was not made within ninety days after service of the suggestion of death. Defendants filed a formal suggestion of death (Doc. 18) on November 27, 2019 notifying the Court that Decedent died on or about May 26, 2019. The Court pointed out that "Defendants' suggestion of death (Doc. 18) fails to indicate that it was served on the decedent's representative or successor [] and, therefore, it is unclear under relevant caselaw whether the 90-day period set forth in [Fed. R. Civ. P. 25(a)(1)] has been triggered." Doc. 20 at 2. The Court invited Decedent's counsel to substitute the proper party to this action twice. First, on December 30, 2019 (Doc. 20) and again on March 16, 2020 (Doc. 26). On August 27, 2020, Defendants formally served Walker with the suggestion of death. Doc. 51 at 2. Accordingly, Defendants contend that the ninety-day dismissal period was triggered and began to run on August 27, 2020 and expired on November 25, 2020. Doc. 37 at 3.

In response to Defendants' argument, Plaintiff argues that Defendants' suggestion of death served on Walker was ineffective to trigger the ninety-day rule in Fed. R. Civ. P. 25(a)(1). Plaintiff reasons that "the unrepresented personal representative of the estate, was not served with proper notice of the suggestion of death" because Defendants failed to explain to Walker the potential

consequences of failing to substitute a proper party plaintiff.  Doc. 51 at 4.

Under Rule 25(a) the Court is permitted to dismiss a case if the motion for substitution is not made within ninety days after the date death is suggested upon the record.  *See Escareno v. Carl Nolte Sohne GmbH & Co.,* 77 F.3d 407, 411 (11th Cir. 1996).  Two conditions must be met in order to trigger the ninety-day clock for dismissal under Rule 25(a)(1).  *See McGuinnes v. Novartis Pharm. Corp.,* 289 F.R.D. 360, 362 (M.D. Fla. 2013)(citation omitted).  First, a party must formally suggest the death on the record.  *See* Fed. R. Civ. P. 25(a)(2).  Second, the party that filed the suggestion of death must serve the non-party successor or representative of the decedent with the suggestion of death, consistent with Fed. R. Civ. P. 4.  *See* Fed. R. Civ. P. 25(a)(3).

The ninety-day clock for dismissal was triggered when Defendants filed the suggestion of death on the record and served it on Walker.  Contrary to Plaintiff's argument, Rule 25(a) does not require the suggestion of death to include an explanation about the potential consequences of failing to substitute a proper party plaintiff.  Doc. 52 at 2.  Rule 25(a) requires that the suggestion of death be on the record and served on all parties to the action.  Here, Defendants have satisfied these requirements.  Additionally, the suggestion of death (Doc. 18) filed in this action conforms to Form 30, found in the Appendix of Forms to the Federal Rules of Civil Procedure.  *See* Doc. 52-1 at 2.  This form provides sufficient notice to all entities involved in the proceeding who are affected by the death.  Accordingly, the Court finds that all requirements for dismissal under Fed. R. Civ. P. 25(a) have been satisified and Plaintiff's argument fails because as Defendants note in their reply, the notice to Walker was proper.

Plaintiff next asserts that good cause and excusable neglect exists due to Covid-19.  District Courts have discretion to extend Rule 25 ninety-day period for substitution.  *See Lizarazo v. Miami-Dade Corr. & Rehab Dept.*, 878 F.3d 1008, 1011-12 (11th Cir. 2017).  Fed. R. Civ. P.

6(b)(1)(A) permits the Court to extend Rule 25 ninety-day period for good cause with or without a motion.  Pursuant to Fed. R. Civ. P. 6(b)(1)(B), the Court may extend the period within which the substitution of a party may be made under Rule 25, where a party can show that its failure to act was the result of excusable neglect.  *Id.*  "[I]n applying Rule 6(b), the Courts of Appeals have generally recognized that 'excusable neglect' may extend to inadvertent delays. Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 113 S. Ct. 1489, 1496, 123 L. Ed. 2d 74 (1993).  "The determination of excusable neglect is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission and the proper factors to consider are: (1) the danger of prejudice to the [nonmovant]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."  *Carruth v. Smyth*, Civ. Act. No. 7:15-cv-1089-LSC, 2018 WL 804272 at *4, 2018 U.S. Dist. LEXIS 21531 at * 11-12 (N.D. Ala. Feb. 9, 2018) (citing *Pioneer*, 507 U.S. 380 at 395).

Unfortunately, Plaintiff failed to show that its delayed submission of a motion for substitution was the result of excusable neglect.  Plaintiff knew it needed to file a motion for substitution since at least November 27, 2019 when Defendants filed the suggestion of death (Doc. 18).  Although Plaintiff represented that it would be filing a motion to substitute the proper party, no action was taken until over a year later on December 29, 2020, more than 90 days after Defendants served Walker and several weeks after Defendants filed their Motion to Dismiss.  *See* Docs. 37, 48.  Furthermore, Plaintiff did not represent Walker until December 23, 2020, which

means Plaintiff "never even put itself in a position to make the necessary substitution until Ms.
Walker finally became their client on December 23, 2020, after BP had filed its Motion to
Dismiss." Doc. 52 at 4-5. Plaintiff failed to exercise sufficient diligence to engage the Decedent's
personal representative and acquire the authority to file a motion to substitute until eight months
later.

The Court finds that Plaintiff failed to substitute a proper party within the ninety-day time
frame required in Fed. R. Civ. P. 25(a)(1) and the failure to do so was not excusable neglect.
Consequently, dismissal is appropriate.

The Court notes that the Defendant's motion requests a dismissal with prejudice. The older
version of Fed. R. Civ. P. 25(a) functioned as a statute of limitations which resulted in a dismissal
with prejudice. *Anderson v. Yungkau*, 329 U.S. 482, 485-86, 67 S. Ct. 428, 91 L. Ed. 436 (1947).
However, the 1963 amendments to the federal rules liberalized substitution after death. 7C Charles
Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1955 (3d ed.
2007). Therefore, a court is no longer required to dismiss with prejudice under Rule 25(a). *See,
e.g.*, *United States v. Bahr*, 275 F.R.D. 339, 341 (M.D. Ala. 2011); *Lewis v. Flowers*, Civ. Act.
No. 1:15-cv-116-HSO-JCG, 2016 U.S. Dist. LEXIS 173604, at *7, 2016 WL 7265046, at * 3 (S.D.
Miss. Dec. 15, 2016); *Rowland v. GGNSC Ripley, LLC*, Civ. Act. No. 3:13-cv-000111-DMB-SAA,
2016 U.S. Dist. LEXIS 101733, at *13, 2016 WL 4136486, at *5 (N.D. Miss. Aug. 8, 2016); *Sydow
v. Weyerhaeuser Co.*, Civ. Act. No. 14-cv-219-wmc, 2015 U.S. Dist. LEXIS 152160, at * 5, n. 2,
at * 1, n. 2 (W.D. Wis. Nov. 10, 2015). This Court aligns with its sister courts in finding that a
Rule 25(a) dismissal is not an adjudication on the merits. Further, the Court finds that dismissal

is sanction enough without finding that the most extreme sanction of with prejudice is not required here.[3]

## IV.   CONCLUSION

The Court finds that Plaintiff failed to file a timely motion for substitution under Fed. R. Civ. P. 25(a).  Therefore, Defendant's *Motion to Dismiss* (Doc. 37) is **GRANTED** and Plaintiff's *Opposed Motion For Substitution of Parties* (Doc. 48) is **DENIED**.   Therefore, this case is **DISMISSED without prejudice**.  All other pending motions are **DENIED as moot**.

**DONE** and **ORDERED** this the 20th day of May 2021.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that although this dismissal is without prejudice it is possible that due to the statute of limitations such a dismissal could be tantamount to a dismissal with prejudice. *See Perry v. Zinn Petroleum Companies, LLC,* 495 F. App'x. 981, 984 (11th Cir. 2012).  However, that would be a collateral consequence and cannot be necessarily determined here based upon the limited information before the Court.